**Vinson&Elkins**

Christopher E. Duffy cduffy@velaw.com
Tel +1.212.237.0000 Fax +1.212.237.0100

**VIA ECF**  October 4, 2023

The Honorable Edgardo Ramos
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Adventist Health System Sunbelt Healthcare Corp. v. MultiPlan, Inc.*, No. 23-cv-07031 (ER)

Your Honor:

We write on behalf of Plaintiff Adventist Health System ("AHS") in response to Defendant MultiPlan's pre-motion letter. This case is a rarity in antitrust litigation. AHS has *direct evidence* at the pleading stage of illegal agreements between MultiPlan and its competitors to suppress reimbursement payments to healthcare providers for out-of-network services, and admission from MultiPlan of the extraordinary anticompetitive effects of that agreement. According to MultiPlan, the conspiracy undercompensates AHS and other healthcare providers by as much as 81%, and bilks them out of billions of dollars every year— funds that non-profit hospitals like AHS could use to pay doctors and nurses and invest in further improvements to patient care, but that instead go to further enriching multi-billion-dollar insurance middlemen. MultiPlan and its co-Conspirators like to call their scheme "repricing," but that is a self-interested euphemism for *price-fixing*, a form of conduct that is *per se* unlawful under the antitrust laws.

In the face of these allegations, MultiPlan devotes its pre-motion letter to improper attempts to ask the Court to accept MultiPlan's off-base version of the facts at the pleadings stage. MultiPlan asks this Court to ignore the *Twombly* standard, and seeks to have this Court disregard MultiPlan's own publicly-stated positions on key issues in this case. AHS has done far more than "raise a reasonable expectation that discovery will reveal evidence of illegal agreement," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); it already has such evidence, and discovery is likely to reveal much more.[1]

**Horizontal Agreement (First Claim for Relief).** As alleged in detail in the Complaint, the MultiPlan Cartel is a horizontal restraint of trade that violates Section 1 of the Sherman Act. *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984) ("horizontal" restraints arise from agreements between actual or potential competitors). MultiPlan does not seriously argue that AHS' allegations are implausible. Instead, MultiPlan informs the Court that it disagrees with some of AHS' allegations and would prefer to characterize them differently, which is not a proper at the Rule 12(b)(6) stage.

*First*, MultiPlan says the Complaint merely "defines" MultiPlan as a competitor of health insurance networks, ignoring the many times that MultiPlan has expressly ***defined itself*** as such a competitor, including in SEC filings, sworn trial testimony, and investor presentations. *See, e.g.,* Compl. ¶¶ 55–62. Far from being "frivolous" or "a falsehood," AHS' allegations that MultiPlan competes with the other participants in the Cartel matches MultiPlan's own pre-litigation position on the matter.

*Second*, MultiPlan baldly asserts that its repricing "business" is somehow "separate" from its PPO

---

[1] AHS has proposed beginning to negotiate necessary discovery stipulations and setting a date for a Rule 26(f) conference, but MultiPlan has refused. Given the strength of the allegations and the ongoing harm caused by the alleged conspiracy, AHS intends to request an order from this Court setting case management and discovery deadlines pursuant to Rules 16 and 26 of the Federal Rules of Civil Procedure.

**V&E**

networks, and that its repricing business does not compete with the other participants in the MultiPlan Cartel. Dkt. 34 at 2. That argument is circular. As the Complaint explains, MultiPlan's pricing methodology for out-of-network reimbursements does not "compete" with its Co-Conspirators' pricing methodologies *because of the MultiPlan Cartel*: the Cartel consists of agreements that MultiPlan and its competitors will use MultiPlan's pricing methodology, making it the sole pricing methodology for all out-of-network reimbursements rather than competing with each other. Compl. ¶¶ 84–90. Any purported "separateness" of MultiPlan's repricing "business" is meaningless under the antitrust laws. A price-fixer cannot evade liability by declaring that pricing is simply a "separate business." And MultiPlan's assertions of "separateness" are at best a factual dispute with the well-pled facts in the Complaint. *See* Compl. ¶ 88 (describing the commingling of MultiPlan's pricing methodology and PPO networks in its "network rental agreements" with its competitors).[2]

*Third*, MultiPlan declares that AHS' *per se* horizontal conspiracy claim requires allegations that all of the payors who made "repricing" agreements with MultiPlan also made agreements with each other. MultiPlan thus conflates the pleading requirements for a "hub-and-spoke" conspiracy (AHS' second claim for relief) with those for a conspiracy among horizontal competitors (AHS' first claim for relief). *Compare In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671 (S.D.N.Y. 2012), at 690–91 *with id.* at 689–90. For a horizontal conspiracy claim, there is no requirement that members of a cartel have an overarching agreement among themselves to enter into a cartel agreement; all that is required are plausible allegations that each defendant made an agreement with a horizontal competitor. *Id.* at 689–90 (rejecting arguments that defendant was "involved in only a portion of [the conspiracy]" and reiterating that proving horizontal conspiracy only requires demonstrating "a meeting of minds in an unlawful arrangement").

*Fourth*, MultiPlan implies that its cartel agreement was somehow beneficial because it might lower prices paid by patients. Dkt. 34 at 1–2. That has not been a valid defense to conduct that is illegal *per se* for nearly 100 years. *See United States v. Trenton Potteries Co.*, 273 U.S. 392, 397–98 (1927). The fact that MultiPlan believes its Cartel was somehow beneficial is irrelevant. *See, e.g.*, *Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 817 F.2d 938, 947 (2d Cir. 1987).[3] Moreover, MultiPlan's speculation that patients benefit from the MultiPlan Cartel is belied by the well-pled facts in the complaint. *See* Compl. ¶¶ 252-56.

**Hub-and-Spoke Conspiracy (Second Claim for Relief).** In the alternative, AHS alleges that the MultiPlan Cartel is a "hub-and-spoke" conspiracy, with MultiPlan as the "hub" and the payors who have agreed to use its pricing methodology as the "spokes." *See Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000). MultiPlan's only response to this claim is to assert that AHS fails to allege a "rim"—a horizontal agreement between the spokes—because its allegations of "parallel conduct" and "plus factors" are somehow insufficient. But MultiPlan fails to identify a single infirmity with these allegations, and effectively ignores vast swaths of the Complaint, including allegations that MultiPlan facilitated an industry-wide transition away from UCR reimbursement rates (Compl. ¶ 120); that after enacting MultiPlan's repricing scheme, reimbursement payments to healthcare providers plummeted (*id.* ¶ 272); that MultiPlan fostered and encouraged communication and adoption by and among the Co-Conspirators through coordinating meetings and tradeshows (*id.* ¶¶ 171–187); that the Co-Conspirators engaged in

---

[2] In a footnote, MultiPlan appears to make a half-hearted argument that this case should be subject to arbitration, despite the fact that the alleged conspiracy was specifically designed to address *out-of-network* reimbursements that, by definition, are not governed by any contract, much less by an arbitration agreement between AHS and MultiPlan.

[3] MultiPlan asserts that this case is "no different" from others brought against MultiPlan. Dkt. 34 at 3. That is not correct. None of MultiPlan's cited cases involved the direct evidence of conspiracy and horizontal cartel claim at issue here.

**V&E**                                                                                                               October 4, 2023   Page 3

conduct that makes no sense absent a conspiracy, such as United Healthcare abandoning a multi-million dollar in-house claims suppression technology in favor of recommitting to the Cartel (*id.* ¶¶ 194–98, 200–07); and that the Co-Conspirators previously colluded to limit reimbursement payments (*id.* ¶¶ 165–170). Further, this is the rare antitrust case where AHS has provided direct evidence at the starting line that the "spokes" conspired to set prices, *e.g.*, at the "middle of the pack" of their Co-Conspirators. *Id.* ¶ 223. These allegations easily demonstrate the plausibility of a conspiracy at the pleading stage. *See United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015).

**Vertical Agreement (Third Claim For Relief).** In the alternative, AHS alleges that MultiPlan's repricing scheme is a vertical agreement that unreasonably restrains trade. *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 826–28 (S.D.N.Y. 2016). Here again, MultiPlan misunderstands the applicable pleading requirements.

*First*, MultiPlan faults AHS' relevant market allegations for lacking references to "product interchangeability" or "demand cross-elasticity." Dkt. 34 at 3. As a matter of law, these concepts have no application in a case like this one, alleging a buyer-side conspiracy involving services (not products). *Todd v. Exxon Corp.*, 275 F.3d 191, 201–02 (2d Cir. 2001). MultiPlan's authorities are inapposite.

*Second*, MultiPlan asserts that there can be no market for the reimbursement of out-of-network healthcare services because the members of the MultiPlan Cartel do not "mandate" reimbursement rates, and there is an optional arbitration process for resolving individual reimbursement disputes. But MultiPlan ignores the well-pled allegations of the Complaint that, by using MultiPlan as an "enforcer" who issues artificially suppressed reimbursement rates as exploding offers on a "take-it-or-leave-it basis," and in huge daily volumes, the members of the MultiPlan Cartel *do* effectively mandate reimbursement rates while making it practically impossible for a provider to challenge each suppressed rate through arbitration. Compl. ¶¶ 69, 230–233, 252. Further, as MultiPlan concedes, arguments about the relevant market and market power are "fact-intensive inquir[ies]" and almost never appropriate for resolution on the pleadings. Dkt 34 at 3.

*Third*, MultiPlan contends that AHS has failed to allege an "adverse effect" on competition. Not so. The Complaint explains in detail how, but for the carel, networks would have fairly compensated healthcare providers for their services, allowing them to invest those funds in ways that benefit patient care. Compl. ¶¶ 228–256. Indeed, courts have had little difficulty finding that agreements restricting price competition harm competition. *US Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 285 (S.D.N.Y. 2015).

*Finally*, MultiPlan asserts that because its Cartel resulted in lower payments to healthcare providers, AHS' claims are "not cognizable under the antitrust laws." Dkt. 34 at 3. But artificially lowered payments are exactly the anticompetitive effect that buyer-side cartels like MultiPlan's are designed to achieve. *In re Eur. Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 840–41 (S.D.N.Y. 2001). And there is no question that agreements between buyers to deflate payments to sellers are *per se* violations of the antitrust laws, just as seller-side agreements to *inflate* prices would be. *Todd*, 275 F.3d at 213–14. MultiPlan's entirely unsupported contention that its Cartel benefited patients is a factual dispute unfit for a motion to dismiss, and in any event is expressly foreclosed by the facts pled in AHS' Complaint. Compl. ¶¶ 252–55.

                                                 Respectfully submitted,
                                                 ***/s/ Christopher E. Duffy***
                                                 Christopher E. Duffy